Frank E. EVERETT, III, Plaintiff,

v.

UNITED STATES of America; United States Department of Agriculture; United States Forest Service, Defendants.

Civ.A.No. 95–0769(EGS).

United States District Court, District of Columbia.

Aug. 5, 1997.

Roger J. Marzulla, Evangeline Paschal, Akin, Gump, Strauss, Hauer & Feld, Washington, DC, for Plaintiff.

Rudolph Contreras, Assistant United States Attorney, Washington, DC, for Defendants.

## MEMORANDUM OPINION

SULLIVAN, District Judge.

### I. INTRODUCTION

Frank E. Everett, III ("plaintiff"), seeks a declaratory judgment and injunctive relief against the United States of America, the United States Department of Agriculture, and the United States Forest Service ("defendants"), because he contends defendants acted arbitrarily and capriciously in violation of the Administrative Procedure Act ("APA") when they (1) issued a Special Order barring aircraft landings in the Sawtooth National Park in violation of 36 C.F.R. § 251.50 and (2) denied plaintiff a special use permit to land his helicopter in the Sawtooth National Forest.

Plaintiff moved for summary judgment on counts I and II and argued that the issuance of the Special Order was arbitrary and capricious, in violation of the APA. Defendants moved for summary judgment on all counts

and argued that the denial of the special use permit was not arbitrary and capricious within the meaning of the APA. At a hearing before the Court on August 23, 1996, defendants agreed to rescind the Special Order, thereby rendering counts I and II of plaintiff's complaint moot. The Court then reserved its ruling on defendants motion for summary judgment as to count III, *i.e.*, that the Forest Service's denial of plaintiff's special use permit application was arbitrary and capricious.

On September 3, 1996, the Court directed the parties to submit supplemental briefs on the following two issues: (1) whether Forest Service regulation, 36 C.F.R. § 251.50(a),[1] requires plaintiff to obtain a special use permit before he can land his helicopter in the Sawtooth National Forest and (2) whether the Forest Service acted arbitrarily and capriciously under the APA when it denied plaintiff's special use permit application. With the issues presented as such, plaintiff now moves for summary judgment on count III.

Upon consideration of the parties' supplemental memoranda, the Court holds that, under 36 C.F.R. § 251.50(a), a special use permit is required for plaintiff to land his helicopter in the Sawtooth National Park. The Court further holds that the Forest Service did not act arbitrarily and capriciously in violation of the APA when it denied plaintiff's special use permit application. Accordingly, the Court **GRANTS** defendants' motion for summary judgment as to count III, and **DENIES** plaintiff's motion for summary judgment as to count III. Therefore, this case is **DISMISSED WITH PREJUDICE.**

## II. FACTUAL BACKGROUND

Plaintiff is a licensed, commercial helicopter pilot who owns a vacation home in Blaine County, Idaho. Plaintiff uses his helicopter for recreational purposes and wants to land near his vacation home. This vacation property is the end lot in the Barlow Subdivision and sits adjacent to a parcel of land that is administered by the Forest Service as part of Sawtooth National Forest. This three and one-half acre parcel is separated from other Forest Service property by the Big Wood River.

A Blaine County Zoning Ordinance prohibits aircraft landings on the Barlow Subdivision, and consequently makes it unlawful for plaintiff to land his helicopter on his property. The parties do not dispute that, notwithstanding this Ordinance, plaintiff can land his helicopter at the Freedman Airport located 20 miles from plaintiff's house. Plaintiff contends that the law supports his use of a more feasible alternative—to land his helicopter in the Sawtooth National Forest on the parcel of land adjacent to his home.

On October 16, 1994, plaintiff's adjoining neighbor, Joan Anwalt, complained to the District Ranger on the Ketchum Ranger District at Sawtooth National Forest about plaintiff's helicopter landings on the Sawtooth Forest land. As a result of Anwalt's complaint, the Sawtooth Forest Supervisor, Jack E. Bills, issued a Special Order, pursuant to 36 C.F.R. § 261.50(a),[2] that barred aircraft landings in the Sawtooth National Forest. On December 19, 1994, plaintiff appealed to the U.S. Department of Agriculture. In response to this appeal, plaintiff was informed by a Deputy Regional Forester, on February 3, 1995, that the Special

1. 36 C.F.R. § 251.50(a) explicitly designates all uses of National Forest System lands as "special uses," with the exceptions of those uses governed by regulations for disposal of timber (section 223) and minerals (section 228), and the grazing of livestock (section 222). Persons desiring to engage in a "special use" must apply with an authorized officer, for "special use authorization," with the exceptions set forth in section 251.50(c).

   36 C.F.R. § 251.50(c) provides, in part, that no special use authorization is required for "noncommercial recreational activities such as camp-

ing, picnicking, hiking, fishing, hunting, horseback riding, and boating...." However, even these noncommercial activities may be subject to the permit requirement under section 251.50(c)(1), if "[a]uthorization of such use is required by an order issued pursuant to 36 C.F.R. § 261.50."

2. 36 C.F.R. § 261.50(a) provides, in part, that "each Forest Supervisor may issue orders which close or restrict the use of described areas within the area over which he has jurisdiction."

Order was not subject to appeal under any Forest Service regulation.

On March 16, 1995, plaintiff filed an application for a special use permit with the District Ranger of the National Forest System. Plaintiff specifically requested authorization to land his helicopter in the Sawtooth National Forest for only two or three times a month during the daylight hours. In a letter dated March 27, 1995, District Ranger Alan Pinkerton denied plaintiff's application for special use authorization to land his helicopter in the Sawtooth National Forest. Plaintiff subsequently commenced this action.

### III. STANDARD OF REVIEW

Pursuant to section 706(2)(A) of the APA, this Court is authorized to review an agency decision of the United States Forest Service ("Forest Service"). *See* 5 U.S.C. § 706(2)(A). In doing so, the Court should afford "considerable weight" to the Forest Service's findings and its construction of the "statutory scheme it is entrusted to administer." *See Chevron U.S.A., Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 844–45, 104 S.Ct. 2778, 2782–83, 81 L.Ed.2d 694 (1984). Thus, the Court will set aside an agency determination only if it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. *See International Bhd. of Teamsters v. United States,* 735 F.2d 1525, 1534 (D.C.Cir.1984).

In ruling on cross-motions for summary judgment, the Court shall grant summary judgment only if one of the moving parties is entitled to judgment as a matter of law upon material facts that are not genuinely disputed. *Rhoads v. McFerran,* 517 F.2d 66, 67 (2d Cir.1975); *see* 6 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 56.13, at 56–171 (2d ed.1994). The Court finds that the cross-motions for summary judgment present no genuinely disputed material facts which would preclude summary judgment.

### IV. DISCUSSION

#### A. *Special Use Authorization*

Plaintiff's argument that 36 C.F.R. § 251.50 does not obligate him to obtain a special use permit to land his helicopter with-

in the Sawtooth National Forest is essentially two-fold. First, he maintains that the Forest Service has not issued any regulations that are subject to notice and comment rulemaking, which specifically proscribe non-commercial helicopter landings in the Sawtooth National Forest. Second, plaintiff argues that his helicopter use has not been prohibited by section 251.50 because other non-commercial helicopters and aircrafts, *i.e.,* seaplanes, repeatedly land without a permit in the Sawtooth National Forest. In essence, plaintiff's contentions are based on the premise that section 251.50 only exempts non-commercial recreational use of helicopters from permit authorization procedures. As explained in this Opinion, the Court is not persuaded by plaintiff's argument, and holds that under section 251.50, special use authorization is required for plaintiff to land his helicopter in the Sawtooth National Forest to access his vacation home.

#### 1. *Defendants' Authority to Prohibit Helicopter Landings*

Plaintiff first contends that the Forest Service has not promulgated a regulation, subject to notice and comment rulemaking, which specifically prohibits helicopter landings in the Sawtooth National Forest. He also alleges that defendants applied a novel interpretation of the regulations in this case to his detriment. Specifically, plaintiff argues that defendants' reliance on section 251.50 to prohibit recreational helicopter landings in the Sawtooth National Park is flawed because that regulation does not explicitly proscribe non-commercial recreational helicopter landings in the Sawtooth National Park. Plaintiff essentially challenges the Forest Service's authority under section 251.50(a) to require special use permits for the activity.

In response to plaintiff's contentions, defendants persuasively argue that Congress has delegated its power over public lands to the Secretary of Agriculture and to the Forest Service. *See Kleppe v. New Mexico,* 426 U.S. 529, 539, 96 S.Ct. 2285, 2291–92, 49 L.Ed.2d 34 (1976). Defendants contend that as an exercise of this power, they have promulgated regulations pertaining to appropri-

ate usage of the National Forest System. *See* 36 C.F.R. § 251.50. That regulation provides that *"[a]ll uses* of National Forest System lands ... except those provided for in the regulations governing the disposal of timber and minerals and the grazing of livestock, are designated special uses." 36 C.F.R. § 251.50(a) (emphasis added). Further, a person must obtain a special use permit from an officer before engaging in a special use. *Id.* Section 251.50(c) exempts "noncommercial recreational activities such as camping, picnicking, fishing, horseback riding, and boating" from the special use permit requirement. 36 C.F.R. § 251.50(c). Section 261.70(a)(7) also provides that "each Regional Forester ... may issue regulations prohibiting acts or omissions within all or any part of the area over which he has jurisdiction for the following purpose[ ]: public safety." 36 C.F.R. § 261.70(a)(7).

■ Plaintiff's argument is flawed because he incorrectly interprets section 251.50 to mean that special use permits are *only* required for commercial recreational activities. Plaintiff relies on *United States v. Patzer,* 15 F.3d 934 (10th Cir.1993), to contend that the only reasonable understanding of 36 C.F.R. § 251.50 is that special use permits are required for all commercial activities. Plaintiff refers to the statement made by the Tenth Circuit that "[p]rior to and after ... 1988 ... special-use authorization was required for commercial outfitting on [National Forest Service System] lands." *Id.* at 943.

In the Court's view, plaintiff's reliance on *Patzer* is misplaced. In *Patzer,* the plaintiff was charged with violating 36 C.F.R. § 251.50(a) by engaging in a commercial activity—outfitting and filming motion pictures—without a special use permit. The Tenth Circuit upheld plaintiff's conviction for conducting commercial operations in the National Forest on the grounds that plaintiff was not using the land for the purposes of grazing livestock, nor for the disposal of timber or minerals in accordance with the specific language of the Forest Service regulation. *Id.* at 938. Thus, the circuit court did "not distinguish between commercial and non-commercial uses." Defs.' Reply to Pl.'s Suppl.Mem.P. & A. at 6; *see Patzer,* 15 F.3d

at 938–40. Rather, the circuit court looked at the plain meaning of the regulations to determine whether plaintiff's use required a special use permit. *Patzer,* 15 F.3d at 938–40.

■ Furthermore, contrary to plaintiff's assertions, defendants' interpretation of section 251.50 is reasonable. First, the specific language, *"such as,"* limits the scope of noncommercial recreational activities under this exemption to those activities that are similar to camping, picnicking, fishing, and horseback riding. 36 C.F.R. § 251.50(c). Moreover, Congress' failure to exempt *all* noncommercial recreational activities demonstrates its intent to limit the scope of activities that would be exempt from special use authorization. Giving deference to both the plain meaning of sections 251.50(c) and 261.70(a)(7), and the Forest Service's expertise in determining what activities are indeed recreational, defendants rationally concluded that, unlike other recreational uses, plaintiff's helicopter use involved greater safety risks than the aforementioned exempt activity, and that plaintiff could still operate his helicopter on non-forest grounds in close proximity to his vacation home.

*2. Non–Commercial Aircraft Recurrent Landings in the Sawtooth National Forest*

■ Plaintiff further claims that the general public, other helicopter pilots, and even he, shared common knowledge that noncommercial helicopters "repeatedly" land in the Sawtooth National Forest without a permit, and, as such, a special use permit is not required for him to land his helicopter in the forest. Plaintiff attempts to buttress his argument by pointing out that the Sectional Aviation Map, which was created to inform pilots where they could land, did not even indicate that non-commercial helicopters required a permit to land in that area. Plaintiff also refers to the declaration of Richard A. Dominy, a helicopter pilot and aviation consultant, in which Dominy states that a Forest Ranger permitted him to land anywhere within the Forest without a permit,

except for in the Wilderness and Recreation Areas. Dominy Decl. ¶ 3.[3]

Defendants do not refute plaintiff's claim that the Federal Aviation Map makes no reference to a prohibition of helicopter landings in its Sectional Aviation Map. Rather, defendants point to the fact that the landing of aircraft has generally been prohibited on Forest Service lands or waters. Aeronautical Info. Manual, § 7–4–8, *reprinted in* U.S. Dep't of Transp.Regs., Fed. Aviation Regs. and Aeronautical Info. Manual (1996); *see* Defs.' Supp.Br.Supp.Mot.Summ.J. at 6–7.[4] Defendants also concede that the Forest Service does in fact authorize certain helicopter landings without a permit in the Sawtooth National Forest that "are in support of the agency's mission," *i.e.*, fire-fighting or contract helicopter landings. Therefore, defendants reasonably concluded that plaintiff's proposed use of the forest land to access his vacation home does *not* fall within the scope of authorized agency helicopter landings.

Further, plaintiff argues that, because seaplanes and snowmobiles are allowed in the park without a permit, his helicopter use should not require a special use permit. The Court also rejects this argument. First, seaplanes are not in fact afforded *carte blanche* use of the National Forest grounds. Rather, as defendants point out, (1) seaplanes are relegated to designated landing areas and (2) both seaplanes and helicopters require authorization. Defs.' Supp.Br.Supp.Mot.Summ.J. at 8–10; *see generally* Aeronautical Info. Manual, § 7–4–8, *reprinted in* U.S. Dep't of Transp.Regs., Fed. Aviation Regs. and Aeronautical Info. Manual (1996); Seaplane Pilots Association, Water Landing Directory 68 (4th ed.1996), *reprinted in* Defs.' Supp. Br.Supp.Mot.Summ.J., Ex. E.

Second, defendants rationally distinguish plaintiff's use of his helicopter from seaplane landings and snowmobile use. Unlike seaplanes, which land on isolated, designated bodies of water, plaintiff's use would require the Forest Service to designate a specific parcel of land to be a landing field solely for his personal non-commercial use. Defendants further argue that helicopter landings pose much greater risks than snowmobiling, *see generally* Defs.' Suppl. Br.Supp.Mot.Summ.J. at 10–12, and generally require other uses of the forest land to be excluded, Forest Service Manual 2727.11, *reprinted in* Defs.' Suppl. Br.Supp.Mot.Summ.J., Ex. B. Thus, the Forest Service reasonably concluded that a special use permit is required for plaintiff to land his helicopter in the Sawtooth National Park in light of the fact that plaintiff's use would cause greater safety risks, would require designating a specific parcel of land just for plaintiff's private helicopter landings, and would generally preclude recreational uses of that land. *See id.;* Defs.' Suppl. Br.Supp.Mot.Summ.J. at 5–10.

## B. The Agency's Denial of Plaintiff's Special Use Permit

■ Plaintiff's final claim is that the Forest Service's refusal to issue him a special use permit was arbitrary and capricious. On March 27, 1995, the Forest Service denied plaintiff's special use permit application on the persuasive grounds that the proposed use was not in the public interest. The Forest Service based its determination on the following three reasons: (1) plaintiff's use of the Sawtooth National Forest to land his helicopter could be reasonably accommodated by using non-National Forest Systems lands; (2) plaintiff's less expensive use of the Forest and the convenience to him was an insufficient justification for his use of the National Forest lands; and (3) plaintiff

---

**3.** *Defendants, in turn, respond that Mr. Dominy's assertions do not comport with agency practice. Defendants argue that if Forest Service personnel informed Mr. Dominy that landing in the Forest is unrestricted, those personnel misunderstood agency policies. Moreover, defendants maintain that during the time when Dominy claims he operated his helicopter on Forest grounds for filming purposes, this use of a helicopter may actually have been authorized by a special permit (for filming) issued to the filming* company, without him being aware of it. Defs.' Reply Pls.' Supp.Mem.P. & A. at 7–8.

**4.** The Court is aware that the Aeronautical Information Manual provisions simply re-state what the Forest Service regulations already require for landing aircraft on National Forest Service lands, and are not independent sources of authority.

would be the only person to benefit from landing his helicopter in the Sawtooth National Forest to access his property. *See* Letter from Pinkerton to Marzulla, of 3/27/95, *reprinted in* Mem. of P. & A. Supp. Defs.' Mot.Summ.J. and Opp'n to Pl.'s Mot. Partial Summ.J., Ex. 9; Forest Service Manual 2700, *reprinted in* Mem. of P. & A. Supp.Defs.' Mot.Summ.J. and Opp'n to Pl.'s Mot. Partial Summ. J., Ex. 10.

Specifically, plaintiff argues that Deputy Regional Ranger, Alan Pinkerton, disregarded the six criteria specifically set forth in section 251.54(i) when he denied plaintiff's permit application.[5] Plaintiff argues that Ranger Pinkerton relied solely on the Forest Service Manual ("Manual"), which was never promulgated as a regulation and, therefore, Pinkerton did not have a legal basis to support his decisions. As support for his argument that defendants relied on a "consideration of irrelevant factors," plaintiff relies on the decision in *Western Radio Serv. Co. v. Espy*, 79 F.3d 896 (9th Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 80, 136 L.Ed.2d 38 (1996).

For the following reasons, the Court is not persuaded by plaintiff's argument and concludes that the Forest Service was not arbitrary and capricious in denying plaintiff a special use permit to land his helicopter in the Sawtooth National Forest.

### 1. Reliance on the Forest Service Manual

Essentially, plaintiff's argument fails for the following reasons. First, plaintiff mischaracterizes the holding in *Western Radio*. In *Western Radio*, the plaintiff argued that the Forest Service Manual had the independent force and effect of law. *Western Radio*, 79 F.3d at 901. In that case, the plaintiff further argued that the Forest Service acted arbitrarily and capriciously by failing to comply with the provisions set forth in the Forest Service Manual when it issued a special

use permit. *Id.* at 900–01. The Ninth Circuit upheld the Forest Service's determination on the grounds that the Forest Service Manual did not have the independent force and effect of law and, therefore, was not binding authority. *Id.* at 901. Plaintiff incorrectly interprets *Western Radio's* holding to mean that the Forest Service can not refer to or use the Manual to interpret the language of the regulations. Defendants argue, and the Court concurs, that *Western Radio* only stands for the proposition that the Forest Service is not *obligated* to use the Manual when considering a special use permit application.

Further, the Ninth Circuit's interpretation of *Western Radio* is consistent with the Forest Service Manual's requirements set forth in section 251.54(i). In *Western Radio*, the Court explicitly stated, "in dictum we explained that 'the Forest Service Manual merely establishes guidelines for the exercise of the Service's prosecutorial discretion....' " *Id.* at 901 (quoting *United States v. Doremus*, 888 F.2d 630, 633 n. 3 (9th Cir.1989)). As applied to the present case, the District Ranger used the Manual to "provide[ ] guidance regarding the denial criteria at 36 C.F.R. § 251.54(i)." Defs.' Suppl. Br.Supp.Mot.Summ.J. at 13. Therefore, the District Ranger reasonably relied on the Manual to determine whether plaintiff's use was in the public interest.

### 2. Forest Service's Reliance on Regulations

Second, plaintiff's argument that Ranger Pinkerton did not rely on regulations in 36 C.F.R. § 251.54(i) to deny plaintiff's special use permit, is not persuasive. The record clearly demonstrates that Pinkerton based his decision on section 251.54(i)(2) of the Forest Service regulations, which states that "[a]n authorized officer may deny issuance of an authorization for all other special uses ... if that officer determines that ... [t]he proposed use would not be in the public interest." *See* Letter from Pinkerton to Marzulla,

---

5. The six criteria set forth in 36 C.F.R. § 251.54(i) are as follows: (1) the proposed use would be inconsistent or incompatible with the purposes for which the land is managed; or (2) the proposed use would not be in the public interest; or (3) the applicant is not qualified; or (4) the use would otherwise be inconsistent with applicable Federal and State law; or (5) the applicant does not or cannot demonstrate technical or financial capacity; or (6) there is no person or entity authorized to sign a special use authorization. Plaintiff concedes that all but factor two are inapplicable to his case.

of 3/27/95, *reprinted in* Mem. of P. & A. Supp.Defs.' Mot.Summ.J. Opp'n to Pl.'s Mot. for Partial Summ. J., Ex. 9. In addition, Pinkerton cited to the Manual, which has been issued pursuant to 36 C.F.R. § 200.4, and thus he reasonably relied on the Code of Federal Regulations for determining whether plaintiff's helicopter landings in the Sawtooth National Forest would be in the public interest. *See* 36 C.F.R. § 251.54(i)(2).

Further, the explicit language of 36 C.F.R. § 251.110(g) provides that the Forest Service is not obligated "to grant additional access through National Forest System lands," where "there is existing access or a right of access to a property over non-National Forest land or over public reads that is adequate or that can be made adequate." Indeed, plaintiff does not even contest the District Ranger's findings that other alternatives such as the Wood River Valley Airport, State Highway 75, and Barloe Road are within plaintiff's service area to afford him "reasonable use and enjoyment of [his] land." 36 C.F.R. § 251.110(c). Therefore, the Forest Service reasonably concluded that plaintiff should be denied the special use permit.

### 3. Reasonableness of the Forest Service's Decision

Finally, plaintiff argues that the Forest Service acted arbitrarily and capriciously by concluding that plaintiff's use of the Sawtooth National Forest was not in the public interest because only plaintiff benefited from landing his helicopter in the Forest. The Court is not persuaded. Plaintiff specifically points to the fact that other activities, such as baseball games and picnicking, solely benefit one person but are still considered to be in the public interest. Plaintiff posits that helicopters in general provide a valuable function, and further argues that his use of the Sawtooth National Forest should also be considered to be in the public interest.

Plaintiff's use of the land as an "easement" to access his property is easily distinguishable from activities such as picnicking and baseball games and even other authorized aircraft landings, as previously discussed by the Court in this Opinion. Further, plaintiff's use is distinguished because helicopter landings raise safety concerns, and several alternative landing sites already exist. Con-

trary to plaintiff's contention, the Forest Ranger also found that plaintiff's use would exclude other members of the public from using the Forest to the point that the Forest Service "would be required to designate the parcel of National Forest System land as a designated heliport," that would preclude all other uses for safety reasons. Letter from Pinkerton to Marzulla, of 3/27/95, *reprinted in* Mem. of P. & A. Supp.Defs .' Mot. Summ.J. and Opp'n to Pl.'s Mot. for Partial Summ.J., Ex. 9; *see also* Forest Service Manual 2727.11, *reprinted in* Defs.' Suppl. Br.Supp.Mot.Summ.J., Ex. B. Upon consideration of the Forest Service's expertise in determining appropriate land uses, the Court holds that the Forest Service reasonably denied plaintiff's special use permit application because plaintiff's use of the Sawtooth National Park to land his helicopter would not be in the public interest.

### V. CONCLUSION

In view of the foregoing, defendants' motion for summary judgment as to count III of plaintiff's complaint is **GRANTED**. Plaintiff's motion for summary judgment as to count III of plaintiff's complaint is **DENIED**. An Order will issue with this Opinion.