Frank E. EVERETT, III, Appellant,

v.

UNITED STATES of America,
et al., Appellees.

No. 97–5282.

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 28, 1998.

Decided Oct. 30, 1998.

Roger J. Marzulla argued the cause for appellant. With him on the briefs was Nancie G. Marzulla.

Rudolph Contreras, Assistant U.S. Attorney, argued the cause for appellees. With him on the brief were Wilma A. Lewis, U.S. Attorney, and R. Craig Lawrence, Assistant U.S. Attorney.

Before: EDWARDS, Chief Judge, WALD and SENTELLE, Circuit Judges.

EDWARDS, Chief Judge:

This case involves a claim by appellant Frank E. Everett ("Everett") that he has a right to land his personal helicopter on National Forest lands. The United States Forest Service ("Service") denied Everett a permit to land his helicopter and forbade him to land without a permit. Everett's attempt to overturn the Service's action was rejected by the District Court and he now appeals.

Service regulations designate "[a]ll uses of National Forest System lands" as "special uses," with the exception of those uses provided for in the regulations governing the disposal of timber and minerals and the grazing of livestock. 36 C.F.R. § 251.50(a) (1998). Under the regulations, "[b]efore engaging in a special use, persons or entities must ... obtain a special use authorization from the authorized officer unless that requirement is waived by paragraph (c) of this section." *Id.* The regulations exempt from this permit requirement "noncommercial recreational activities such as camping, picnicking, hiking, fishing, hunting, horseback riding, and boating." 36 C.F.R. § 251.50(c).

Everett seeks to land his private helicopter on a three-and-one-half acre parcel of Sawtooth National Forest ("Sawtooth") land that abuts his vacation property in rural Idaho. Everett argues that he is not required to obtain a permit for this use of National Forest System ("NFS") land, because § 251.50(c) exempts his proposed use from the permit requirement. Alternatively, assuming he is required to obtain a permit, Everett argues that the Service's denial of his permit request was arbitrary and capricious, because the decision rested on inappropriate criteria. The Service contends that helicopter landing bears little resemblance to the uses expressly exempted under § 251.50(c) and is, therefore, prohibited with-

out a permit under § 251.50(a). The Service denied the permit request in this case based on its determination that Everett's helicopter landing could be accommodated on non-NFS lands, Everett had adequate alternative access to his property, and Everett's proposed use would inure solely to his own benefit at the expense of other uses of the same parcel. Because we find that the Service reasonably interpreted and applied its regulations, we affirm the District Court's grant of summary judgment in favor of the Service.

## I. BACKGROUND

Everett owns a vacation home in the Barlow Subdivision in Blaine County, Idaho. His property lies directly adjacent to a three-and-one-half acre parcel of Sawtooth land that is separated from other NFS land by the Big Wood River. A road across Everett's property provides access to this Sawtooth parcel, and the public routinely engages in picnicking and fishing activities there. Everett is a licensed pilot and he would like to land his private helicopter on this piece of land in order to access his property. He initially intended to land the helicopter on his own property; however, county officials notified him in 1993 that use of the property as a private airfield violated a local zoning ordinance. The county suggested that he use Freedman Airport, located 20 miles away, as a landing site. Instead, Everett chose to land his helicopter on the adjacent NFS land that is not directly governed by the zoning ordinance.

On October 16, 1994, Everett's immediate neighbor contacted the Service's Ketchum Ranger District to complain about Everett's helicopter landings on Sawtooth land. Several days later, the Ketchum Ranger District Lands Forester, Carol Brown, informed Everett that he was not authorized to land his helicopter on NFS land. District Ranger Alan Pinkerton then wrote to the Sawtooth Forest Supervisor, Jack E. Bills, expressing concern over "the potential for uncontrolled use of private aircraft" in the NFS and urging Bills to take control of this activity, as the Service had done with respect to the Sawtooth National Recreation Area. *See* Appendix ("App.") 131.

Subsequently, on November 2, 1994, Bills issued Special Order No. 04–14–00–002 ("Order"), pursuant to his authority under 36 C.F.R. § 261.50(a). The Order prohibited the "[l]anding of aircraft, or dropping or picking up any materials, supplies, or person by means of aircraft, including helicopters, except at established airfields," on all Sawtooth land. App. 9. The Order, which purported to amend certain existing regulations, explicitly exempted from the prohibition persons with permits. Everett attempted to appeal the Order to the Chief of the Service, Jack Ward Thomas. However, on February 3, 1995, a Deputy Regional Forester, Jack A. Blackwell, informed Everett that the Order was not subject to appeal under any Service regulations and advised him instead to apply for a special use permit.

On March 16, 1995, Everett submitted an application to the Ketchum Ranger District for a special use permit to "occasionally land his private helicopter on Federal land next to his property in order to access his vacation home." App. 17. Everett's request anticipated use of the Sawtooth parcel immediately adjacent to his property two to three times per month for several minutes at a time. By letter dated March 27, 1995, District Ranger Pinkerton notified Everett that his application was denied for the following reasons: (1) the proposed use could be reasonably accommodated on non-NFS lands, *i.e.*, the local airport; (2) Everett had adequate alternative access to ensure the reasonable use and enjoyment of his land; and (3) the application did not demonstrate how the proposed use would benefit anyone other than Everett. *See* App. 25. Pinkerton derived these factors from provisions of Service regulations and the Forest Service Manual ("Manual"). *See* 36 C.F.R. § 251.54(i)(2) (1998); U.S. FOREST SERVICE, FOREST SERVICE MANUAL, *Special Uses Management* § 2703.2 (effective Jan. 25, 1994), *reprinted in* App. 152. Pinkerton did not cite Bills's 1994 Order in denying Everett's request for a special use permit.

Everett then filed a complaint against the Service in District Court, alleging that the 1994 Order issued by Bills was a new regulation that could not be issued without notice and comment, and that denial of his permit

request was arbitrary and capricious. At a hearing on cross-motions for summary judgment, the District Court strongly encouraged the Service to rescind the Order, particularly in light of the Service's position that Everett's proposed helicopter landing was prohibited without a permit regardless of the Order. On August 27, 1996, the Service withdrew the Order "predicated on the fact that the [Service] has sufficient authority to regulate aircraft and helicopter landings on the Sawtooth National Forest without relying on a special order." App. 269.

The withdrawal of the Order mooted Everett's challenge thereto. Accordingly, the District Court requested supplemental briefing on two issues, which became the focus of this litigation: (1) whether or not a special use permit was required for Everett to land a helicopter on Sawtooth land; and (2) whether the Service's denial of Everett's special use permit was arbitrary and capricious. The parties then resubmitted cross-motions for summary judgment.

The District Court granted the Service's motion for summary judgment as to all claims. *See Everett v. United States,* 980 F.Supp. 490, 491 (D.D.C.1997). The court found that § 251.50(a) required Everett to obtain a special use permit. *See id.* at 493. The court also found that the Service considered appropriate factors set forth in the regulations and the Manual in denying Everett's application. *See id.* at 494–96. This appeal followed.

## II. ANALYSIS

### A. Standard of Review

We review a grant of summary judgment *de novo,* applying the same legal standard that governed the District Court's determination. *See Troy Corp. v. Browner,* 120 F.3d 277, 281 (D.C.Cir.1997). Summary judgment is appropriate where the record presents "no genuine issue as to any material fact" and the moving party is entitled to judgment as a matter of law. *See id.* (quoting FED.R.CIV.P. 56(c)). We find no genuinely disputed material facts that would preclude summary judgment in this case.

The Service's action can be overturned only if it is found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (1994). "[I]n a competition between possible meanings of a regulation, the agency's choice receives substantial deference." *Rollins Environmental Serv. Inc. v. Environmental Protection Agency,* 937 F.2d 649, 652 (D.C.Cir.1991). Accordingly, the Service's interpretation of its own regulations will prevail unless it is "plainly erroneous or inconsistent" with the plain terms of the disputed regulations. *Auer v. Robbins,* 519 U.S. 452, 461, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997) (citation omitted). Moreover, the Service's decision to deny the special use permit will survive arbitrary and capricious review unless the agency committed a clear error of judgment or failed to consider appropriate criteria in reaching its decision. *See Marsh v. Oregon Natural Resources Council,* 490 U.S. 360, 378, 109 S.Ct. 1851, 104 L.Ed.2d 377 (1989).

### B. The Service's Interpretation of the Regulation

The principal questions at issue here focus on the meaning of the regulations set forth at 36 C.F.R. § 251.50(a) and (c). The Service's position is quite simple: § 251.50(a) requires a private user of the NFS to obtain a special use permit before engaging in any activity that is not exempted. The only exemptions conceivably applicable to Everett's proposed use are those set forth in subsection (c) of § 251.50, for "noncommercial recreational activities such as camping, picnicking, hiking, fishing, hunting, horseback riding, and boating." The listed exemptions do not encompass helicopter use, in the Service's view, because such use "bear[s] little semblance to those limited recreational activities that are explicitly exempted." Brief for Appellees at 12. Everett, in turn, takes a far more expansive view of § 251.50(c), arguing that it excuses *all* "noncommercial" recreational activities from the permit requirement, and that his proposed use falls within that ambit. *See* Appellant's Brief at 13; Appellant's Reply Brief at 2.

We have little trouble concluding that the Service's position reflects a reasonable interpretation of the regulations. Section 251.50(c) can easily be read to create only a limited exemption for noncommercial recreational activities of a similar character to those activities specifically listed. Under this view, it was clearly reasonable for the Service to draw a distinction between helicopter use and the various recreational uses—camping, fishing, and the like—ordinarily contemplated on NFS land. Although helicopter use may facilitate certain backcountry recreational pursuits, it is, on its face, readily distinguishable from traditional recreational activities. For one thing, helicopter use is more likely to create a safety hazard to third persons than is, for example, hiking or camping. Moreover, unlike car or snowmobile use, which allows for simultaneous enjoyment of the forest by many users, helicopter use may quite directly displace other uses, by requiring, for safety reasons, the designation of landing sites and air traffic limitations. In short, there are ample legitimate reasons for the Service, based on its expertise, to manage different types of motorized and other forest uses in different ways.

█ Even assuming the existence of a blanket exemption for noncommercial recreational activities, we do not see how Everett's proposed use of the Sawtooth land falls within that exemption. Everett's proposed helicopter landings would not be "recreational" uses of NFS lands; rather, the landings would be for the sole purpose of facilitating Everett's transportation to his private home off of NFS lands. Specific regulations concerning the use of NFS land to access non-federal land apply to this situation, providing, in relevant part, that "landowners shall be authorized" access "adequate to secure them the reasonable use and enjoyment of their land," but that "[w]here there is existing access or a right of access ... that is adequate or that can be made adequate, there is no obligation to grant additional access through [NFS] lands." 36 C.F.R. § 251.110(c), (g) (1998). Everett can land his helicopter at an airport located only 20 miles from his home and can also reach his property via public roads. Thus, the Ser-

vice's resolution of this situation was perfectly consistent with the general regulatory scheme covering uses of NFS lands.

█ Everett presents several arguments to avoid the result that we reach today. Only three warrant brief discussion here. First, Everett suggests that, in order to impose a permit requirement for helicopter landings on NFS land, the Service had to proceed by notice-and-comment rule making to expressly designate helicopter landing as a "special use." Everett is obviously wrong in this view. As heretofore indicated, Everett's proposed helicopter use is already regulated under a reasonable interpretation of existing rules; thus, the Service need not promulgate a new regulation to cover the activity. Moreover, the Service engaged in an informal adjudication, pursuant to § 251.54 ("Special use applications"), in reviewing Everett's request for a special use permit. Nothing more was required under existing law or regulations. Thus, the Service was not subject to Administrative Procedure Act requirements covering notice-and-comment rule makings or formal adjudications. *See Pension Benefit Guaranty Corp. v. LTV Corp.*, 496 U.S. 633, 655, 110 S.Ct. 2668, 110 L.Ed.2d 579 (1990); *Zotos Int'l, Inc. v. Young*, 830 F.2d 350, 353 (D.C.Cir.1987).

█ Second, Everett maintains that a "consistent and longstanding practice of allowing recreational aircraft use of [Sawtooth]" land precludes the Service's present interpretation of § 251.50(c). Appellant's Brief at 19. In support of this contention, Everett cites isolated instances in which helicopter pilots landed their aircraft on Sawtooth land, apparently without special use permits. *See* App. 423–24, 427–29. It simply cannot follow from this meager evidence, however, that the Service is now foreclosed from enforcing § 251.50. Such an argument is tantamount to saying that police officers can no longer ticket drivers for speeding, because many drivers speed and get away with it. The Service has never established a regulatory position that contradicts the interpretation it now relies upon; therefore, the agency's position must be sustained.

Finally, Everett contends that the 1994 Order supports his position, because it demonstrates the Service's own understanding that aircraft landings were unregulated prior to its issuance. At oral argument, Everett's counsel made much of the fact that the 1994 Order purported to "amend[ ]" existing regulations. However, we find that Everett's reliance on the 1994 Order is wholly misguided. For one thing, the Order was rescinded by the Service. For another, the 1994 Order was not the agency's *final* disposition of Everett's claim. The agency's final order in this case was issued in 1995 by District Ranger Pinkerton. And Pinkerton did not rely on the 1994 Order in his 1995 disposition. Therefore, the issuance of the 1994 Order, later rescinded, is of no moment in our consideration of this case, because it is not before us.

Based on the foregoing, we decline to overturn the Service's manifestly reasonable interpretation of § 251.50(a) and (c) to require a special use permit for helicopter landings on NFS land. The agency's interpretation comports with the language of the regulations and advances the legitimate regulatory goal of public safety.

## C. The Service's Denial of Everett's Permit Request

Having concluded that the Service reasonably interpreted its regulations to govern Everett's proposed use of the Sawtooth, we next confront Everett's argument that the Service arbitrarily and capriciously denied his request for a special use permit. The Service based its denial on considerations supported by both the regulations and the Manual. *See* 36 C.F.R. § 251.54(i)(2); U.S. Forest Service, *supra*, § 2703.2. Everett now contends that it was improper for the Service to consider factors set forth in the Manual in rendering its decision. We disagree.

Everett relies solely on *Western Radio Services Co. v. Espy,* 79 F.3d 896 (9th Cir. 1996), in which a company challenged the Service's issuance of a special use permit to a competitor company, alleging, *inter alia,* that the Service failed to follow the guidelines in its Manual. *See id.* at 900. *Western Radio,*

however, is inapposite. There, the court did not find that the Manual was an inappropriate source of guidance, but rather found that the Manual does "not have the independent force and effect of law." *Id.* at 901. The Ninth Circuit's holding that a third party cannot sue to *require* the Service to comply with Manual criteria, *see id.* at 901–02, does not support Everett's position before this court. To the contrary, *Western Radio* explicitly acknowledged the Manual's role in establishing "guidelines for the exercise of the Service's prosecutorial discretion." *Id.* at 901. Thus, in denying Everett's permit request, the Service properly considered criteria articulated in both the regulations and the Manual interpreting those regulations.

In a last ditch effort, Everett also contends that, even if the Service applied the proper criteria in evaluating his permit request, it applied those criteria "incorrectly." Appellant's Brief at 23. This argument, however, is plainly without merit. Everett cannot maintain in earnest that the factors upon which the Service relied do not reasonably support its denial of his application. At bottom, Everett seeks use of the public lands for more convenient access to his own private vacation home—a use that is neither necessary for his enjoyment of his property nor in the public interest. Thus, the Service's conclusion in this regard was not arbitrary and capricious.

## III. Conclusion

We hold that the Service's interpretation of 36 C.F.R. § 251.50(a) and (c) is clearly reasonable, and that the Service applied appropriate criteria in denying Everett's permit request. Accordingly, the District Court's grant of summary judgment in favor of the Service is affirmed.

*So ordered.*